UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:11-CV-11580-PBS

| |
|---|
| ANTONIO CORREIA,<br><br>              Plaintiff,<br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>              Defendant. |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF AURORA LOAN SERVICES, LLC

Plaintiff, Antonia Correia, has filed a verified complaint against Aurora Loan Services, LLC ("Aurora") seeking to invalidate a mortgage on his primary residence. Although plaintiff has in prior court proceedings acknowledged the validity of the underlying loan agreement and mortgage—explaining that he refinanced the subject property with a mortgage "through his wife"—he now alleges that the security agreement sought to be enforced did not encumber his property.

Plaintiff's allegations in this case, with significant support from counsel who is well aware of the underlying facts, is nothing but a blatant effort to defraud the mortgage lender and avoid responsibility for an acknowledged secured debt.

In perpetrating this fraud, plaintiff and counsel have appeared in five separate proceedings, in three separate courts; in each instance, plaintiff's and counsels' facts and arguments shift without regard for their merit or truthfulness, demonstrating a clear attempt to play fast and loose with the court system for their own advantage.

Plaintiff's and counsels' questionable tactics in these matters have had the desired effect of delaying any foreclosure of plaintiff's property, but the proverbial buck must stop here. Plaintiff must be held to his original position, in his original suit against Aurora—that he refinanced the subject property through his wife—and must not be allowed to change his tune now that it has become clear that the original position will not allow him to avoid liability for his actions.

For the reasons set forth below, the Court should dismiss Correia's complaint, with prejudice.

## FACTS

Correia purchased 30 West Cottage Street, Boston, Massachusetts (the "Property") on or about June 9, 1981. Complaint, ¶ 6. On or about May 2, 2007, Correia deeded the Property to his now estranged wife; the deed was recorded at Book 41853, Page 158. Complaint, ¶ 11. On or about May 2, 2007, Correia's wife deeded the Property back to Correia; the deed was recorded at Book 41853, Page 179. Complaint, ¶ 12. On or about May 21, 2007, Correia's wife executed a note, secured by a mortgage on the Property; the mortgage was recorded at Book 41853, Page 160. Complaint, ¶ 13. On or about July 7, 2009, the mortgage was assigned to Aurora, which has attempted to foreclose on the Property. Complaint, ¶ 17.

Correia previously filed a Superior Court action (Docket SUCV2010-02887). Complaint, ¶ 9. In his verified complaint to the Superior Court, a copy of which is attached hereto as Exhibit A, Correia alleged—***under the pains and penalties of perjury***—the following facts:

      a.      Correia is the record owner of a certain three-family property located in Dorchester, Suffolk County, Massachusetts. Superior Court Complaint, Nature of Action.

      b.      Plaintiff's wife, Nair Correia, is the Mortgagor on a certain mortgage and note secured by said property. Superior Court Complaint, Nature of Action.

      c.      ***"Mr. Correia, through his wife, . . . refinanced a certain mortgage instrument secured by the property through First Magnus Financial Corporation, then assigned to Defendant, Aurora Loan Services, LLC."*** Superior Court Complaint, ¶ 8 (emphasis added).

      d.      Mr. and Mrs. Correia fell behind on their mortgage obligations. Superior Court Complaint, ¶ 13.

Although Correia, through prior counsel, agreed to dismiss the claims raised in the Superior Court action, with prejudice, in consideration of Aurora's promise to review Correia's amended loan modification application, the action remains open.[1] At any rate, Correia alleges in his current pleadings that the Superior Court action is void. Complaint, ¶ 9.

Correia has previously filed multiple petitions for bankruptcy. See U.S. Bankruptcy Court, District of Massachusetts, Case Number 07-16096, Case Number 11-11819 and Case Number 11-20343; see also Complaint, ¶ 9. In his first petition to the U.S. Bankruptcy Court (Case Number 07-16096) (the "First Petition"), a copy of which is

---

[1] Although not dismissed as promised by Correia, through counsel, the Superior Court action is currently suspended as a result of Correia's subsequent bankruptcy filing and has not resumed following dismissal of the bankruptcy action as a result of Correia's failure to file additional documents.

attached hereto as Exhibit B, Correia alleged—*under the pains and penalties of perjury*—the following facts:

    a.    Plaintiff resides at the Property.  Form 1.

    b.    Plaintiff is a real estate developer.  Form 1.

    c.    In addition to the Property, plaintiff owned eight (8) other properties with a total estimated value of $2,879,900.00.  Schedule A.

    d.    The Property was subject to a secured claim in the amount of $626,406.00.  Schedule A, at ¶ 2.

    e.    Aurora held an *undisputed*, secured claim on the Property.  Schedule D.

    f.    Nair Correia, also residing at the Property, was a co-debtor on Aurora's loan.  Schedule H.

In his second petition to the U.S. Bankruptcy Court (Case Number 11-11819)(the "Second Petition"), a copy of which is attached hereto as Exhibit C, Correia alleged—*under the pains and penalties of perjury*—the following facts:

    a.    Plaintiff resides at the Property.  Form 1.

    b.    In addition to the Property, plaintiff owned four (4) other properties with a total estimated value of $908,600.00.  Schedule A.

    c.    The Property was subject to a secured claim in the amount of $627,000.00.  Schedule A.

    d.    Aurora held an *undisputed*, secured claim on the Property.  Schedule D.

Despite plaintiff's representations under oath regarding the existence of the undisputed, secured claim of Aurora to the Property, on July 25, 2011, within the context of the Second Petition, plaintiff filed an Emergency Motion and Memorandum of Law to

Determine the Secured Status of a Lien and to Avoid Such Lien with regard to Aurora's mortgage.  A copy of the Emergency Motion as filed with the Bankruptcy Court in the Second Petition is attached hereto as Exhibit D.  The Emergency Motion filed in the Second Petition makes exactly the same argument raised by plaintiff in the instant action.

Aurora objected to plaintiff's Emergency Motion and a hearing was held on the Emergency Motion in the Bankruptcy Court.  After hearing, plaintiff's Emergency Motion to avoid Aurora's lien was denied.  A copy of Aurora's Objection to the Emergency Motion as filed with the Bankruptcy Court in the Second Petition is attached hereto as Exhibit E.  A copy of the Bankruptcy Court's decision on the Emergency Motion as entered in the Second Petition is attached hereto as Exhibit F.

The Second Petition was dismissed as a result of plaintiff's failure to file an amended Chapter 13 petition in accordance with an order of the Bankruptcy Court.

In his third petition to the U.S. Bankruptcy Court (Case Number 11-20343)(the "Third Petition"), a copy of which is attached hereto as Exhibit G, Correia alleged—under the pains and penalties of perjury—the following facts:

a. Plaintiff resides at the Property.  Form 1.

b. In addition to the Property, plaintiff owns four (4) other properties with a total estimated value of $674,350.00.  Schedule A.

c. Aurora is identified as a creditor on the Property, but now the claim is disputed.  Schedule D.

The Third Petition was dismissed as a result of plaintiff's failure to timely file schedules and a proposed Chapter 13 plan in accordance with an order of the Bankruptcy Court.

The instant action represents plaintiff's fifth attempt—in three separate courts—to delay or avoid enforcement of Aurora's mortgage on the Property.

## ARGUMENT

For the purposes of a motion to dismiss, the Court must accept as true all well-pled factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, public records and matters of which a court may take judicial notice. *See* 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007). As such, this Court may consider Correia's prior allegations, made under penalty of perjury in other court proceedings, and the documents on record in those proceedings, without converting this motion to one for summary judgment.

**I.      Plaintiff's claims in this action are barred by the doctrine of judicial estoppel and the complaint must be dismissed.**

The doctrine of judicial estoppel is equitable in nature. It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding. *InterGen N.V. v. Grina,* 344 F.3d 134, 144 (1st Cir.2003). The purpose of the doctrine is to protect the integrity of the judicial process. It is typically invoked when a litigant tries to play fast and loose with the courts. *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001); *Alt. Sys. Concepts, Inc. v. Synopsis, Inc.,* 374 F.3d 23, 33; *Patriot Cinemas, Inc. v. Gen. Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987).

The contours of judicial estoppel are hazy. *Perry v. Blum*, --- F.3d ----, 2010 WL 3815776 (C.A.1 (Mass.)). Even though its elements cannot be reduced to a scientifically precise formula, *New Hampshire,* 532 U.S. at 750, courts generally require the presence of three things before introducing the doctrine into a particular case. First, a party's earlier and later positions must be clearly inconsistent. *Id.; Alt. Sys. Concepts,* 374 F.3d at 33. Second, the party must have succeeded in persuading a court to accept the earlier position. *New Hampshire,* 532 U.S. at 750; *Alt. Sys. Concepts,* 374 F.3d at 33. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court. *New Hampshire,* 532 U.S. at 751; *Alt. Sys. Concepts,* 374 F.3d at 33. Plaintiff's positions in this complaint satisfies all three requirements.

### A. *Plaintiff's position in this case is clearly inconsistent with his earlier positions in prior cases.*

Plaintiff's complaint in this action alleges that he "recently came to the realization that the subject Property is free and clear of all liens." Complaint, ¶ 10. The Court must wonder how such a realization has suddenly dawned on a plaintiff who has made numerous inconsistent representations to various courts in order to obtain injunctive and other relief.

In the Superior Court action seeking money damages and injunctive relief to stop foreclosure of the Property, plaintiff alleged—under the pains and penalties of perjury by way of his verified complaint—that he used his wife to refinance the Property with the mortgage that he now seeks to avoid. Exhibit A at ¶8.

In the First Petition seeking bankruptcy relief and in which plaintiff received a standard Chapter 7 discharge, plaintiff alleged—under the pains and penalties of perjury

by way of his voluntary petition—that the Property was subject to Aurora's undisputed mortgage. Exhibit B at Form 1 and Schedules A and D.

In the Second Petition seeking further bankruptcy relief, plaintiff alleged—under the pains and penalties of perjury by way of his voluntary petition—that the Property was subject to Aurora's undisputed mortgage. Exhibit C at Form 1 and Schedules A and D.

Even once the plaintiff decided to challenge the validity of Aurora's lien by way of his Emergency Motion in the Second Petition, he still acknowledged the conveyances back and forth between him and his spouse. Since nowhere in any of his subsequent actions has plaintiff offered any alternative explanation for the deed and deed back, the only logical explanation remains plaintiff's sworn statement in the Superior Court action that *he* refinanced the mortgage, through his wife. Such a deed and deed back arrangement only makes sense in that context, which plaintiff has—under the pains and penalties of perjury—previously explained.

In short, plaintiff's denial of the validity of the mortgage and loan agreement now is clearly inconsistent with his prior acknowledgments of the validity of the agreement and even, in the Superior Court action, his allegation that he was in fact the one to take out the mortgage "through his wife."

### B. *Plaintiff has succeeded multiple times in persuading courts to accept his prior position.*

Plaintiff first asserted the validity of the Aurora mortgage in the First Petition to the U.S. Bankruptcy Court. In that proceeding, plaintiff's allegations affirming the existence and validity of the Aurora mortgage persuaded the bankruptcy trustee that there was no equity in the Property for distribution to creditors and leading to his abandonment of the Property from the bankruptcy estate. These allegations were also part of the

petition that persuaded the Bankruptcy Court to extend plaintiff a standard Chapter 7 discharge. Plaintiff's current complaint acknowledges the abandonment and discharge that flowed from plaintiff's allegations regarding the lien. See Complaint, ¶ 9.

Plaintiff next asserted the validity of the Aurora mortgage in the Superior Court action. In that action, plaintiff sought, *inter alia*, injunctive relief to stop a foreclosure while he pursued a modification of Aurora's loan. The Superior Court was sufficiently persuaded by plaintiff's allegations to enter a temporary order restraining Aurora from foreclosing on the property.

### C.     *Plaintiff would derive an unfair advantage if the Court were to adopt his new position.*

Plaintiff has reversed his prior position—that the Aurora loan and mortgage were valid—and now asks this Court to invalidate the lien. Such action by the Court, however, would confer an unfair advantage on plaintiff in Aurora's years-long effort to enforce its rights under the loan agreement and mortgage.

As plaintiff's serial bankruptcy petitions indicate, his financial situation has deteriorated significantly over the last several years. At the time of the First Petition, plaintiff alleged real and personal property assets of approximately $3,087,975.00 compared to secured and unsecured liabilities totaling approximately $2,182,821.70.[2] At the time of the Second Petition, plaintiff alleged real and personal property assets of approximately $1,091,640.00 compared to total liabilities of $628,517.00.[3] At the time of the Third Petition, plaintiff alleged total assets of $853,190.00 compared to total

---

[2] See Exhibit B, Schedule A + Schedule B – Schedule D – Schedule E – Schedule F = residual assets totaling $905,153.30.
[3] Resulting in residual assets totaling $463,123.00. See Exhibit C, Summary of Schedules.

liabilities of $1,187,014.69.[4]  Additionally, plaintiff's monthly income has decreased from $18,025.00 at the time of the First Petition to $6,035.00 at the time of the Third Petition.[5]

Had plaintiff alleged the invalidity of the mortgage in his initial pleadings in the First Petition, it is unlikely that the trustee would have abandoned an unsecured asset of the estate or that the Bankruptcy Court would have had grounds to discharge plaintiff's unsecured debts.  Moreover, Aurora would have been afforded the opportunity to defend the allegation when plaintiff was still in a positive equity position and could have asserted an unsecured claim against the value of the Property in the First Petition.  By changing his position after the purported abandonment and discharge, plaintiff is seeking to derive an unfair advantage in the resolution of this matter.

Furthermore, as a claim of judicial estoppel is equitable in nature, it is worth noting that plaintiff identified himself as a real estate developer in his First Petition.  His First Petition also showed plaintiff to be the owner of nine (9) separate properties, several of which contained multiple dwelling units and five (5) of which were subject to mortgages.  It is absolutely inconceivable that plaintiff did not understand the nature and structure of the subject mortgage transaction, with simultaneously-recorded, nominal-consideration deeds from him to his wife and from his wife back to him separated by an intervening mortgage on the property.

Clearly plaintiff was unable to obtain his own financing for the Property, arranged a paper conveyance to his wife so that she could obtain that financing on his behalf, and then waited until after the mortgage was recorded—and the loan funds disbursed—to

---

[4] Resulting in residual assets totaling *negative* $333,824.69.  See Exhibit G, Summary of Schedules.
[5] Compare Exhibit B, Schedule I with Exhibit G, Schedule I.

record her deed of the property back to him.[6] To allow plaintiff to utilize such a scheme to obtain loan funds, to acknowledge that scheme to obtain bankruptcy and injunctive relief and then to reject that scheme to request the invalidation of the lien would be inequitable and the Court should find plaintiff's claims barred under the doctrine of judicial estoppel.

> II. **Plaintiff's claims in this action are barred by the doctrine of *res judicata* and the complaint must be dismissed.**

The doctrine of claim preclusion "prohibits the maintenance of an action based on the same claim[s] that [were] the subject of an earlier action between the same parties or their privies." *Bagley v. Moxley,* 407 Mass. 633, 636 (1990). Further, a party may not evade *res judicata* by seeking a different remedy or advancing a new theory of damages. *Mackintosh v. Chambers,* 285 Mass. 594, 596-597 (1934); *Karas v. Karas,* 294 Mass. 230, 200 N.E. 922 (1936); Restatement (Second) of Judgments § 25 & comment f (1982); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4408, at 64-65 (1981). There must be some finality especially when a debtor has been given an opportunity to present objections to a lender's claim. *In re Pachell*, 344 B.R. 8, 15 (D.Mass. 2006), citing *Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.,* 48 F.3d 576, 583 (1st Cir.1995)(*res judicata* relieves parties of cost and vexation of multiple lawsuits, conserves judicial resources, prevents inconsistent decisions, encourages reliance on adjudication, discourages claims splitting and provides "a strong incentive" for all factually related allegations and theories to be brought in one suit). Plaintiff's claim in this case—that the

---

[6] Ironically, awarding relief to plaintiff in this case may well set the table for Aurora to bring a mortgage fraud claim against plaintiff and his wife. Invalidation of the mortgage would provide the requisite harm needed for Aurora's *prima facie* showing of injury derived from the material misrepresentations of plaintiff and his wife in obtaining the loan funds in the underlying transaction.

Aurora mortgage should now be deemed invalid—is precisely the type of claims splitting that *res judicata* seeks to avoid.

Plaintiff could have contested the validity of Aurora's mortgage in the First Petition. Instead, plaintiff acknowledged the existence and validity of the secured debt in obtaining the trustee's abandonment of the secured asset from the estate and a standard discharge of his unsecured debts.

Plaintiff could have contested the validity of Aurora's mortgage in the Superior Court action. Instead, plaintiff acknowledged the existence and validity of the secured debt in obtaining injunctive relief to stay a foreclosure so that he could pursue a modification of the mortgage that he obtained "through his wife."

Although plaintiff did raise the issue to invalidate Aurora's mortgage in the Second Petition, plaintiff's motion to avoid the lien was denied by the Bankruptcy Court after hearing.

Plaintiff's series of frivolous and careless filings have exposed Aurora to the tremendous cost and vexation of multiple lawsuits, has wasted the judicial resources of multiple federal and state courts, has subjected Aurora to inconsistent decisions, has deprived Aurora of reliance on prior adjudications. Because plaintiff could have contested the validity of Aurora's lien in his prior litigations—but did not—plaintiff's claims in this action should be barred under the doctrine of *res judicata*.

## **CONCLUSION**

For the reasons set forth herein, Aurora moves the Court to dismiss plaintiff's claims.

                                        **DEFENDANT, AURORA LOAN SERVICES, LLC,**
By its attorney,

/s/Scott C. Owens_____
Scott C. Owens, Esq.
BBO #654406
HARMON LAW OFFICES, P.C.
P.O. Box 610389
Newton Highlands, MA 02461-0389
Direct: (617) 558-0738
Facsimile: (617) 243-4038
Dated: December 9, 2011                     sowens@harmonlaw.com

## CERTIFICATE OF SERVICE

I, Scott C. Owens, Esquire, certify that on December 9, 2011, I electronically filed the foregoing document with the United States District Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

    Carmenelisa Perez-Kudzma, Esq.
    Daniel Hyman, Esq.

                                        /s/ Scott C. Owens_____
                                        Scott C. Owens, Esq.